773 A.2d 1164 (2001)
340 N.J. Super. 84
Fred H. JOHNSON, Plaintiff-Appellant,
v.
SCHRAGGER, LAVINE, NAGY & KRASNY, Defendant-Respondent, and
Scott A. Krasny, Esq., Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2001.
Decided April 27, 2001.
*1166 Robert M. Rich, Verona, argued the cause for appellant.
E.J. Fernandez-Vince, Haddonfield, argued the cause for respondent (Kelley, Wardell & Craig, attorneys, Mr. Fernandez-Vince, on the brief).
Before Judges KEEFE, STEINBERG and WEISSBARD.[1]
*1165 The opinion of the court was delivered by STEINBERG, J.A.D.
Plaintiff, Fred H. Johnson, appeals from an order granting summary judgment in favor of defendant Schragger, Lavine, Nagy & Krasny (the Law Firm)[2] resulting in the dismissal of his complaint against it, as well as the subsequent denial of his motion for reconsideration. We affirm.
Plaintiff first retained the firm of Albert, Schragger, Lavine, Levy & Siegel (apparently the predecessor to the Law Firm) to file suit against Sari Jo Niles as a result of a dispute he had with her arising out his sale of a horse to Niles. Scott A. Krasny handled the matter for the Law Firm. Krasny succeeded in obtaining summary judgment regarding liability. In addition, substantially all Niles' affirmative defenses were dismissed. On September 7, 1993, the matter was scheduled for trial. On that date, the parties appeared and noted that the case was settled. According to plaintiff, "the court" filed "an Order of Dismissal through Settlement" on September 9, 1993, which included the language "without prejudice to the filing of any subsequent documents reflecting the terms of the settlement/judgment."[3]
Niles did not comply with the settlement. Therefore, on November 3, 1993, Krasny wrote Niles' attorney enclosing a "Stipulation of Settlement", asking that he review and sign the stipulation on behalf of Niles, and forward a payment of $5,000 which apparently was to have been made immediately after settlement.[4] Niles' attorney did not respond. Krasny then left *1167 the firm on December 1, 1993, but continued to represent plaintiff.
Thereafter, he filed a motion, made returnable on April 29, 1994, seeking to enforce the settlement. In his certification in support of the motion, Krasny represented that the terms of the settlement were as follows: Niles would immediately pay $5,000 to defendant, and "[t]he remainder of the judgment of $70,000 [would] be paid by way of a wage garnishment from [Niles'] earnings through her present employer." Krasny's motion was granted and on April 29, 1994, an "Order Enforcing Terms of Settlement" was signed entering judgment in favor of plaintiff against Niles in the amount of $75,000, and ordering that Niles pay plaintiff $5,000 on or before May 27, 1994. The order also required Niles to pay plaintiff the balance "by way of a wage garnishment on defendant's earnings," and further reflected Niles' agreement to assign to plaintiff the proceeds of any recovery she may realize in a legal malpractice action she had instituted against her former attorney regarding the purchase of the horse, up to the unpaid balance of the judgment.
On December 16, 1994, Niles sold a condominium for $209,600, realizing $78,411.67 in net proceeds. The Uniform Settlement Statement from that transaction indicates that a judgment of $4,991 was deducted from the gross amount due Niles from that transaction. However, plaintiff's judgment was not satisfied. Neither party's brief explains why plaintiff's judgment was not satisfied from the proceeds of the real estate transaction. Moreover, at oral argument, the parties were unable to explain why the judgment had not been satisfied.
One year later, on December 11, 1995, Niles filed a Chapter 7 Bankruptcy proceeding, and was granted a discharge on March 18, 1996. We cannot determine from the record whether plaintiff filed a claim in connection with the bankruptcy, or, if he did, whether he obtained any relief.
In October 1997, plaintiff filed suit against the Law Firm and Krasny alleging "defendants were negligent in the conduct of the litigation" between Johnson and Niles. The complaint further alleged that the negligence of the firm and Krasny included, but was not limited to, the "failure to properly and promptly obtain a judgment against ... Niles and to properly docket the same." The Law Firm moved for summary judgment. The motion judge concluded that the harm to plaintiff did not occur until December 1994, after Krasny had left the firm, and, in addition, that the act of malpractice was the failure to file the judgment. Therefore, the judge granted summary judgment, dismissing plaintiff's complaint against the Law Firm. After summary judgment was granted, plaintiff settled with Krasny. We have not been provided with the terms or conditions of the settlement. Plaintiff appeals contending that the Law Firm "negligently represented" him, and the Law Firm's conduct was a proximate cause of his loss.
Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The motion judge must consider whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995). On appeal, we apply the same standard that governs trial *1168 courts in determining whether summary judgment was properly granted. Graziano v. Grant, 326 N.J.Super. 328, 338, 741 A.2d 156 (App.Div.1999). Hence, we must determine whether the competent evidential materials presented to the motion judge, when viewed in the light most favorable to plaintiff, were sufficient to permit a rational fact-finder to determine that the Law Firm breached a duty owing to plaintiff, and whether the breach of that duty was a proximate cause of the damages.
As previously noted, we are unable to determine from the record, and apparently the parties are unable to determine, why the order enforcing settlement which reduced plaintiff's claim to judgment in the amount of $75,000 was not satisfied at the time of Niles' sale of real estate. On appeal, plaintiff contends that the Law Firm should have reduced the settlement to judgment, and had the judgment docketed. He relies, in part, upon R. 4:42-1(b), which requires judgments or orders to be presented to the court for execution within ten days after the decision is made known. He also relies on R.P.C. 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client. We reject those contentions. R. 4:42-1(b) does not apply to settlements. Rather, the rule contemplates presentation to the judge of a judgment or order reflecting a decision made by the judge. In addition, while the Rules of Professional Conduct may provide guidance to the court in determining whether a duty exists, they do not provide an independent cause of action. Baxt v. Liloia, 155 N.J. 190, 201, 714 A.2d 271 (1998); Davin L.L.C. v. Daham, 329 N.J.Super. 54, 74 n. 3, 746 A.2d 1034 (App.Div.2000).
Lawyers owe a duty to their clients to provide their services with reasonable knowledge, skill, and diligence. Ziegelheim v. Apollo, 128 N.J. 250, 260, 607 A.2d 1298 (1992). Thus, attorneys must exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise. St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588, 443 A.2d 1052 (1982). "The requisite elements of a cause of action for legal malpractice are: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416, 678 A.2d 1060 (1996), (citing Lovett v. Estate of Lovett, 250 N.J.Super. 79, 87, 593 A.2d 382 (Ch. Div.1991)).
Our Supreme Court has held that "the traditional jury charge on proximate cause as a continuous sequence is inapt for legal malpractice cases in which there are concurrent independent causes of harm." Conklin, supra, 145 N.J. at 422, 678 A.2d 1060. Rather, in such cases, the jury "must be instructed to determine whether the negligence was a substantial factor in bringing about the ultimate harm." Ibid. While ordinarily the issue of proximate cause should be determined by the fact-finder, nevertheless, our courts view proximate cause as a concept or standard "limiting liability for the consequences of an act based `upon mixed considerations of logic, common sense, justice, policy and precedent.'" Fluehr v. City of Cape May, 159 N.J. 532, 543, 732 A.2d 1035 (1999) (internal citations omitted). In the highly extraordinary case in which reasonable minds could not differ on whether proximate cause has been established, that issue may be removed from the fact-finder. Ibid. While a proximate cause need not be the sole cause of harm, it must be a substantial contributing factor to the harm suffered. Perez v. Wyeth Laboratories, Inc., 161 N.J. 1, 27, 734 A.2d 1245 (1999). *1169 In determining whether the conduct complained of may be considered sufficiently causally connected to the harm so as to justify the imposition of liability, we must consider overall fairness and sound public policy. Brown v. United States Stove Co., 98 N.J. 155, 173, 484 A.2d 1234 (1984). Consequently, the fact-finder must determine whether the negligence complained of was a substantial factor in bringing about the ultimate harm. Id. at 174-75, 484 A.2d 1234.
Plaintiff's contentions are that the settlement contemplated that he receive an immediate payment of $5,000, a "stream of income" from Niles based upon a wage execution, and finally a properly perfected judgment. A judgment does not affect or bind real estate until it is entered on the minutes or records of the court. N.J.S.A. 2A:16-1. The Clerk of the Superior Court is required to "keep a book known as a Civil Judgment and Order Docket in which shall be entered, an abstract of each judgment or order for the payment of money, submitted for entry." N.J.S.A. 2A:16-11. N.J.S.A. 22A:2-7(a) imposes a fee of $25.00 that must be paid in order to record a judgment in the Civil Judgment and Order Docket. Once the proponent of the order for judgment pays the required fee, the Clerk enters an abstract of the judgment or order for the payment of money in the Civil Judgment and Order Docket. R. 4:101-1(a). Finally, if the required filing fee is not paid, the judgment or order must be returned by the Clerk to the proponent with a notation that it had been received, but not filed. R. 1:5-6(c)(1)(A).
Thus, it is clear that an attorney need not prepare an abstract of a judgment for docketing. That function is performed by the Clerk of the Court, provided the appropriate filing fee is paid. As previously noted, we are unable to determine from this record why plaintiff's judgment was not satisfied when the real estate was sold. We are left to speculation. Perhaps the appropriate filing fee was not paid. On the other hand, there may have been confusion in light of the fact that the caption of the order merely reflected that it was enforcing settlement, rather than an order for judgment. Another possibility is that the judgment was properly filed, yet missed by a title searcher. We may not decide a case based upon such speculation. Rather, we must decide whether the motion judge erred in granting summary judgment to the Law Firm.
Plaintiff's claim against the Law Firm is a derivative claim in that it is based upon Krasny's alleged negligence in representing plaintiff. Krasny left the firm within eighty-five days after the settlement was reached. During that period of time, Krasny attempted unsuccessfully to consummate the settlement.
We must consider the facts presented in the light most favorable to plaintiff and determine whether a reasonable fact-finder could conclude that the Law Firm is responsible to him in light of Krasny's failure to reduce the claim to judgment within the eighty-five day period after settlement was reached, before he left the firm, and whether that negligence, if any, was a proximate cause of plaintiff's loss.
We have no doubt that an attorney must attempt to consummate a settlement within a reasonable of time after it is reached. However, we have serious reservations as to whether an attorney who communicates with his opposing counsel in an effort to consummate a transaction, but does not move for the entry of judgment for a period of eighty-three days after settlement was reached is negligent. Remember, Krasny left the firm on December 1, 1993. We need not decide that question because we conclude under the facts of this case any negligence in failing *1170 to move for the entry of judgment prior to December 1, 1993, cannot be considered a proximate cause of plaintiff's loss.
The imputed negligence, if any, of the firm by virtue of Krasny's failure to enter judgment prior to December 1, 1993, when he left the firm, was not, as a matter of law, a substantial factor in bringing about plaintiff's loss. After all, judgment was entered on April 29, 1994, after Krasny left the firm. At that time, there was more than ample opportunity for him to properly perfect the judgment so that it would be a lien on Niles' real estate. In addition, there were sufficient proceeds from the sale, which took place one year after Krasny had left the firm and nearly eight months after the order was entered, to satisfy plaintiff's judgment. While we cannot, from this record, determine whether the judgment was perfected, and if not, why, we do know that any failure to properly perfect it occurred long after Krasny left the firm. Accordingly, we conclude that the failure to obtain the judgment earlier is much too remote to justly and fairly impose liability upon the firm. Simply put, it was not a substantial factor in bringing about the loss, and is not a proximate cause of the damages.
We recognize that Krasny failed to obtain the immediate $5,000 payment or the stream of income through a wage execution. However, we conclude that the failure to so act within the short period of time he remained in the firm after settling plaintiff's claim with Niles, should not impose liability upon the firm since there was more than ample equity in the real estate to completely satisfy the judgment ultimately obtained had it been properly perfected.
Affirmed.
NOTES
[1] Judge Weissbard did not participate in oral argument. However, the parties have consented to his participation in this decision.
[2] The Law Firm contends that by the time the law suit had been filed, Krasny had left the firm, and, consequently, the proper defendant was Schragger, Lavine & Nagy. However, for the purposes of this appeal, that fact is of no consequence.
[3] Unfortunately, contrary to R. 2:6-1(a)(1), neither party included in their respective appendices the "Order of Dismissal." Moreover, if the settlement was placed on the record, we have not been furnished with a transcript of those proceedings. Obviously, the failure to supply pleadings that are essential to the proper consideration of the issues hinders our appellate review.
[4] Unfortunately, neither party has included Krasny's letter of November 3, 1993, or the stipulation of settlement in their respective appendices.