885 A.2d 18

THE COMMUNITY HOSPITAL GROUP, INC. T/A JFK MEDICAL CENTER, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, v. BLUME GOLDFADEN BERKOWITZ DONNELLY FRIED & FORTE, P.C., AND CAROL L. FORTE, ESQ., DEFENDANTS–RESPONDENTS/CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 27, 2005—Decided November 2, 2005.

120

Before Judges COBURN, COLLESTER and LISA.

*Jeffrey M. Pollock* argued the cause for appellant (*Fox Rothschild, LLP,* attorneys; *Mr. Pollock,* of counsel, *Sally E. Heckeroth,* on the brief).

*Cynthia M. Craig* argued the cause for respondents (*Blume Goldfaden Berkowitz Donnelly Fried & Forte*, attorneys; *Ms. Craig*, of counsel and on the brief).

*Abbott S. Brown* argued the cause for amicus curiae *The Association of Trial Lawyers of America–New Jersey* (*Bendit Weinstock*, attorneys; *Mr. Brown*, on the brief).

*Edwin R. Matthews* argued the cause for amicus curiae *Trial Attorneys of New Jersey* (*Bourne Noll & Kenyon*, attorneys; *John C. Simons* of *Moran, Dunst & Doukas*, on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

The Community Health Group, Inc., t/a JFK Medical Center ("JFK") sued defendants, Blume Goldfaden Berkowitz Donnelly Fried & Forte, and Carol L. Forte, Esq., individually, to enjoin their use or disclosure of confidential health information and to compel them to return the information to JFK. The suit was filed on behalf of JFK and two of its patients, N.B. and H.D. Defendants filed an answer and counterclaim, which sought reimbursement for counsel fees and costs from JFK on the ground that the complaint was frivolous. On April 2, 2004, Judge Francis delivered an oral opinion dismissing the action on the ground that JFK lacked standing and reserving on the request for counsel fees. JFK moved for reconsideration, and defendants apparently moved for counsel fees and costs, but their motion papers have not been included in the record. On April 19, 2004, Judge Francis entered an order dismissing the complaint. On May 7, 2004, the judge denied JFK's motion for reconsideration and defendants' motion for counsel fees and costs. These rulings were incorporated in an order dated May 19, 2004. Ultimately, and without reference to other presently irrelevant procedural aspects of the case, JFK filed its notice of appeal from the order dismissing its complaint, and defendants filed a notice of cross-appeal from that portion of the May 19, 2004, order denying their request for counsel fees.

On July 20, 2004, N.B. and H.D. filed their own complaint against defendants for invasion of privacy.

This action arose after defendants had begun representing Dominica Berecsky with respect to a possible medical malpractice action that might include a claim against JFK. Berecsky was diagnosed as having cervical cancer in 2003. Defendants had reason to believe that four of Berecsky's PAP smears, examined in previous years by pathologists at JFK, had been misread as benign when they were positive for the presence of cancer. They also learned that other patients, who were not defendants' clients, may have similarly had their PAP smears misread at JFK.

While investigating Berecsky's case, defendants wrote letters on November 25, 2003, to N.B. and H.D., which read as follows:

I am the attorney for Dominica Berecsky. I am investigating a claim against John F. Kennedy Medical Center based on their failure to properly read samples sent to the pathology department there. It has come to my attention that you may have information about the competency of the pathology department.

If you would be so kind, would you please contact me to discuss what information you may have?

In December 2003, an obstetrician/gynecologist, who routinely sends his PAP slides to JFK for laboratory testing, complained to JFK about the disclosure of his patient's confidential health information (referred to by the parties as "CHI"). The patient was N.B., and she had complained to the physician because defendants were aware of her CHI and because defendants' letter to her had been sent to her mother's address, with the result that her mother had also had learned about the CHI. Another physician received a similar complaint from H.D.

After learning directly from N.B. and H.D. that neither of them had given permission for their CHI to be released to defendants, JFK conducted what it describes as a lengthy investigation. During the investigation it found that there were what it described as "discrepancies" in PAP smears examined for it in 2003 by an independent laboratory in South Carolina. JFK says that it had received encoded lists of PAP smear tests on October 24, December 19, and December 23, 2003, indicating "discrepancies" for,

respectively, twenty-seven, thirty-nine, and forty-one patients. Apparently the discrepancies indicated misread PAP smears. Despite its investigation, which was largely internal, JFK found no evidence bearing on how defendants had obtained the information about N.B. and H.D. When defendants refused JFK's demand that they advise how the information was obtained, asserting attorney-client privilege, this suit ensued.

Plaintiff argues first that Judge Francis erred in holding that it lacked standing under common law. The common-law right at issue is the right to privacy, not of JFK but of N.B. and H.D. And the general rule, which appears to be inconsistent with JFK's claim, is that "[o]rdinarily, a litigant may not claim standing to assert the rights of a third party" unless "the litigant can show sufficient personal stake and adverseness so that the Court is not asked to render an advisory opinion." *Jersey Shore Med. Ctr.-Fitkin Hosp. v. Estate of Baum*, 84 *N.J.* 137, 144, 417 *A.*2d 1003 (1980) (citation omitted).

It appears doubtful that JFK had a sufficient personal stake in the privacy rights of its patients, but JFK claims that it was entitled to bring this action to vindicate the privacy rights of N.B. and H.D. under *Stubaus v. Whitman*, 339 *N.J.Super.* 38, 770 *A.*2d 1222 (App.Div.2001). That case held that school districts did not have standing to assert rights on behalf of resident taxpayers. *Id.* at 63, 770 *A.*2d 1222. But it did say that a "[p]laintiff may also raise the constitutional rights of a third party when the third party's rights are likely to be diluted or adversely affected unless they are raised by a plaintiff holding a confidential relationship with the third party." *Id.* at 51, 770 *A.*2d 1222 (citing *In re Estate of Henry M. Neuwirth*, 155 *N.J.Super.* 410, 419, 382 *A.*2d 972 (Cty.Ct.1978)). Even assuming this dictum from *Stubaus, supra,* is correct and might have justified the initial institution of this action, it can no longer serve as a basis for continuing the action. For N.B. and H.D. have each brought their own action for invasion of privacy against defendants, and there is nothing to indicate that defendants have information bearing on any other

JFK patients or that N.B. and H.D. are not entirely capable of vindicating their own rights if they have been violated by defendants.

JFK also argues that hospitals possess "broad discretionary powers in managing their affairs," *Herbert v. Newton Mem'l Hosp.*, 933 *F.Supp.* 1222, 1235 (D.N.J.1996) (*quoting Desai v. St. Barnabas Med. Ctr.*, 103 *N.J.* 79, 90, 510 *A.2d* 662 (1986)), and therefore the hospital's decision to bring this suit should not be disturbed unless it is an abuse of discretion. But those cases concern a hospital's discretion in managing its internal affairs, and neither addresses nor supports a hospital's right to sue third parties on behalf of a patient.

JFK claims that it has standing to bring this suit under the Health Insurance Portability and Accountability Act ("HIPPA"), 42 *U.S.C.A.* § 1320, which concerns the protection of personal medical information and regulates its use and disclosure by "covered entities." *See* Diane Kutzko, et al., *HIPPA In Real Time: Practical Implications of the Federal Privacy Rule,* 51 *Drake L.Rev.* 403 (2003). "Covered entities" are defined in the Code of Federal Regulations, 45 *C.F.R.* § 160.103, and JFK concedes that defendants do not fall within that category. Nonetheless, and without citation of any case law, JFK argues that its right to bring a civil action is implicit in HIPPA because under 45 *C.F.R.* § 164.530(f), it, as a "covered entity," has a duty to mitigate harm arising from improper disclosure of its patients' private medical information. But the mitigation section contains no express authorization for private lawsuits.

JFK also argues that its right to bring this private action to enforce HIPPA is supported by 42 *U.S.C.A.* § 1320d–6(a), which provides criminal penalties for any person who "knowingly and in violation of this part"

(1) uses or causes to be used a unique health identifier;

(2) obtains individually identifiable health information relating to an individual; or

(3) discloses individually identifiable health information to another person[.]

But "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington,* 442 *U.S.* 560, 568, 99 *S.Ct.* 2479, 2485, 61 *L.Ed.*2d 82, 91 (1979) (citation omitted). The question is "whether Congress expressly or by implication, intended to create a private cause of action." *Sonnenfeld v. City & County of Denver,* 100 *F.*3d 744, 747 (10th Cir.1996) (citation omitted). Neither § 1320–6, nor any other section of HIPPA, contains any language expressly creating a private cause of action. *Univ. of Colo. Hosp. v. Denver Pub. Co.,* 340 *F.Supp.*2d 1142, 1144–45 (D.Colo.2004). Moreover, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others. . . ." *Alexander v. Sandoval,* 532 *U.S.* 275, 290, 121 *S.Ct.* 1511, 1521–22, 149 *L.Ed.*2d 517, 531 (2001). Based on that principle, the court in *University of Colorado Hospital, supra,* held that neither section 1320–6, nor any other section of HIPPA, created a private cause of action by implication. 304 *F.Supp.*2d at 1145. In reaching that conclusion, the court noted "that federal courts have consistently refused to find a private right of action under HIPPA. . . ." *Ibid.* (citations omitted). No contrary authority has been submitted by JFK, and we can find none. Therefore, we hold that a private cause of action cannot be maintained under HIPPA, and the judgment dismissing the complaint is affirmed.

The last matter is defendants' contention that Judge Francis erred in denying their application for counsel fees and costs. Defendants have failed to include any of the pleadings bearing on this issue, with the exception of their counterclaim, which only sought this relief under *N.J.S.A.* 2A:15–59.1.

The entire record on this subject appears in the May 7, 2004, transcript, which reads, in pertinent part, as follows:

THE COURT: Now, with regard to attorney's fees, there was no argument with respect to the same. Counsel, I—I will let you argue that briefly but I really mean briefly.

MS. CRAIG: I'll rely on my papers, Judge.

THE COURT: Okay.

MR. POLLOCK: Your Honor, the standard is whether it was spurious. I believe that although Your Honor has ruled against us and I respectfully disagree on both the facts and the law, on the other hand, we've certainly stated a thoughtful and logical basis upon which the hospital had a course of action it was taking to vindicate its own rights as well as that of the patients for whom it's trying to protect.

THE COURT: The Court is in agree[ment] with that, Counsel, and the application for legal fees is denied.

■ With respect to defendants' argument on appeal that they were entitled to counsel fees as against JFK's attorneys under *Rule* 1:4–8, JFK notes that defendants failed to comply with the rule's notice requirements. *R.* 1:4–8b(1). Defendants reply that this point was not raised below and argue that in any case, their counterclaim provided adequate notice. But, as we have noted, the counterclaim makes no demand against JFK's attorneys, and asserts only that JFK itself should pay counsel fees for filing a frivolous case. Since defendants have failed to supply their moving papers and JFK's opposing papers, in violation of *R.* 2:6–1(a)(1)(A) and (I), and since they made no oral argument in support of their claim to counsel fees, we cannot conclude that they ever made an application under *Rule* 1:4–8(b).

■ Issues not raised below will ordinarily not be considered on appeal unless they are jurisdictional or implicate a substantial public interest. *Brock v. Pub. Serv. Elec. & Gas Co.*, 149 *N.J.* 378, 391, 693 *A.*2d 894 (1997). Neither is the case here. Nor are we obliged to attempt review of an issue when the relevant portions of the record are not included. *Soc'y. Hill Condo. Ass'n v. Soc'y. Hill Assocs.*, 347 *N.J.Super.* 163, 177–78, 789 *A.*2d 138 (App.Div. 2002); *Johnson v. Schragger*, 340 *N.J.Super.* 84, 87 n. 3, 773 *A.*2d 1164 (App.Div.2001). Therefore we will not consider the claim for counsel fees as against JFK's attorneys.

■ With respect to defendants' application for counsel fees and costs from JFK under *N.J.S.A.* 2A:15–59.1, review remains impeded by defendants' failure to include the pleadings bearing on the issue. We have no evidence that defendants complied with the notice requirements of Rule 1:4–8(b)(1), which requires that the

moving party give the other side an opportunity to withdraw the action based on a "specific and detailed notice." *See Trocki Plastic Surgery Ctr. v. Bartkowski,* 344 *N.J.Super.* 399, 406, 782 *A.2d* 447 (App.Div.2001) (holding that the failure to give such notice requires rejection of the motion).

### Relief under *N.J.S.A.* 2A:15–59.1

has been approached cautiously, so that while baseless litigation will be deterred, "the right of access to the court should not be unduly infringed upon, honest and creative advocacy should not be discouraged, and the salutary policy of the litigants bearing, in the main, their own litigation costs, should not be abandoned."

[*Gooch v. Choice Entertaining Corp.,* 355 *N.J.Super.* 14, 18, 809 *A.2d* 154 (App.Div. 2002) (citation omitted).]

### Sanctions may be imposed under the statute if

(1) The complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

(2) The nonprevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

[*N.J.S.A.* 2A:15–59.1b.]

Nothing in the record supports defendants' claim that JFK filed its complaint in bad faith or to harass or injure. Rather, the reasonable inference is that JFK was embarrassed by the disclosure of documents that it was obliged to keep private under HIPPA and wanted to ascertain how the documents were released so that steps could be taken to avoid a reoccurrence of the problem.

The question of JFK's standing to bring the action under New Jersey common law had not been definitively resolved by any judicial opinion that was directly on point, and the dictum in *Stubaus, supra,* provided some support for the course initiated. Moreover, although we are satisfied that HIPPA does not provide for private suits by implication, the only courts so holding have been at the federal district court level, and in districts other than New Jersey. Given those circumstances, we cannot say the trial judge erred in concluding that the case was not frivolous.

During argument, defendants' attorney appeared to indicate that although the initial filing was not frivolous, at some point continued maintenance of the suit became a violation of *N.J.S.A.* 2A:15–59.1. If that is so, demand should have been made at that point with an explanation conforming to the requirements of Rule 1:4–8(b)(1) and *Trocki Plastic Surgery Center, supra.* Defendants' attorney also appears to have been arguing, at least in part, that pursuit of the appeal violated the statute. But in *Zavodnick v. Leven,* 340 *N.J.Super.* 94, 103, 773 *A.*2d 1170 (App.Div.2001), we held that the "Frivolous Litigation Act does not apply to a frivolous appeal." In short, on this record, we cannot conclude that the trial judge erred in denying the request for counsel fees and costs.

Affirmed.