**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2880-19

JOSEPH E. COLEN, III,

     Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION, LAND USE
REGULATION,

     Respondent-Respondent.

_____

> Argued October 6, 2021 – Decided December 3, 2021
>
> Before Judges Hoffman and Susswein.
>
> On appeal from the New Jersey Department of Environmental Protection.
>
> John M. Van Dalen argued the cause for appellant (Van Dalen Brower, LLC, attorneys; John M. Van Dalen, on the briefs).
>
> Michael J. Schuit, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant

Attorney General, of counsel; Michael J. Schuit, on the brief).

PER CURIAM

Petitioner Joseph Colen appeals from the February 12, 2020 final decision of the New Jersey Department of Environmental Protection (DEP) denying his application "for a [] permit to expand his beachfront home" under the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -51. We reverse and remand for further proceedings consistent with this opinion.

I.

Petitioner owns and lives in a two-story beachfront home at 3207 Ocean Boulevard, Long Beach Island (LBI), located within a coastal high hazard area (CHHA), otherwise known as a "high-velocity" or a "V Zone," as delineated on flood mapping completed by the Federal Emergency Management Agency (FEMA). N.J.A.C. 7:7-9.18(a) & (i). Petitioner's home, constructed in 1948, consists of 1440 square feet of living space and sits roughly 475 feet from the ocean in the Brant Beach section of LBI. Petitioner has lived in the home since approximately 1970; during that time, storm waters never reached or damaged his home. A few days after Super Storm Sandy, petitioner inspected the beach and dunes in the area of his home and observed that the storm did not damage the dunes, due to the wide beach between the ocean and the dunes.

Petitioner certified that he

> filed a CAFRA application to expand the interior living space of [my] home . . . so that it would be more adequate as a place to retire . . . . My intent was to enclose the existing elevated deck (or reconstruct the home adding interior space where the elevated deck currently exists) or at least adding space equal to the portion of the deck that is located landward of the toe of the dune at elevation 13 [feet].

According to petitioner, like most lots in the area, his home sits on a fifty-foot lot; in addition, his home sits only 8.8 feet from Ocean Boulevard, which runs north and south along the front of his home, and "only about 10 feet from the right-of-way of 33rd St. to the south, and 8.6 feet to the north property line." He explained that "[d]ue to municipal zoning setback requirements[,] [my] home cannot be expanded on any side except on the side facing the water[,] where the deck is located, thus the reason for my plan to expand the interior living space by enclosing at least a portion of the existing elevated deck."

According to petitioner's engineering expert, petitioner's home is located at the inland edge of the V Zone, "about 475 [feet] from the [m]ean [h]igh [w]ater [l]ine and sheltered from storm water by a broad expanse of beach and a wide dune field, including a primary dune that reaches an elevation of 24 [feet] in height." The expert further disputed DEP's contention that petitioner's elevated deck is located on a dune, asserting that "the inland toe of the dune ends

3

. . . near the waterward edge of the deck."  In addition, the expert certified that petitioner's plans for enclosing his existing deck or rebuilding the home with equal additional interior space will not pose any additional risk of storm damage.

The record indicates the Brant Beach section of LBI is almost entirely developed.  Based upon his own review and investigation, petitioner certified that "it is probable that my home is the only one within miles in this heavily developed section of [LBI] that would be restricted by the V Zone/infill rule as interpreted by DEP staff."   Attached aerial photos appear to support petitioner's contention.

DEP regulations prohibit residential construction or expansion in V Zones, with certain exceptions.  One such exception, known as the "infill exception," allows residential construction or expansion if:

> 1)  the lot was a subdivided lot prior to July 19, 1993;
>
> 2)  the lot is served by a municipal sewer system; and
>
> 3)  a house or commercial building is located within 100 feet of each of the lot lines running perpendicular to the mean high water line. . . .
>
> [N.J.A.C. 7:7-15.2(f)(4)(i)(3).]

To the north of plaintiff's property, a single-family dwelling sits 100 feet from plaintiff's boundary line. To the south, the nearest home sits 135 feet away, separated by an undeveloped lot, consisting of vegetation, and a fifty-foot unpaved right-of-way (33rd street) that provides the public with a walkway to the beach.

On February 20, 2016, petitioner applied for a CAFRA General Permit No. 5 (GP5). Petitioner filed an amended application[1] on March 4, 2016.[2] DEP

[1] Unfortunately, petitioner failed to include either application in his appendix and similarly omitted other relevant documents that should have been included. Rule 2:6-1(a)(1) requires the appendix prepared by the appellant to include "such . . . parts of the record . . . as are essential to the proper consideration of the issues . . . ." Failure to include any item essential to the decision hinders appellate review. Johnson v. Schragger, Lavine, Nagy & Krasny, 340 N.J. Super. 84, 87 n.3, (App. Div. 2001)." Pursuant to Rule 2:5-4(b), DEP identified sixty-two separate items as comprising the record on appeal in this case. Petitioner's appendix contained only a fraction of these items, seriously hindering our review.

[2] At oral argument, petitioner's counsel argued that his client had sought alternative relief and had "presented two possibilities to DEP," either "tear down the house and build a new one, with the square footage that would include the square footage now occupied by the home and the [existing] deck or . . . just enclose – make interior living space – out of that deck." The initial decision of the ALJ stated that "[p]etitioner applied for a permit . . . to remove and reconstruct or alternatively expand oceanward [his home] east of its existing footprint on [his] property." The Commissioner's final decision states that petitioner sought permission "to demolish [his] dwelling and construct a new single[-]family dwelling, with a proposed expansion east of the existing

denied the permit application in June 2016, finding that the nearest dwelling from the southern boundary of petitioner's lot is 135 feet away and therefore beyond the 100-foot distance necessary to come within the infill exception.

In August 2016, petitioner requested an adjudicatory hearing in the Office of Administrative Law (OAL) to challenge DEP's denial of the GP5. After the administrative law judge (ALJ) assigned to the case scheduled the hearing for three days in November 2016, DEP and petitioner filed cross-motions for summary decision.

Petitioner argued that DEP's application of its rules pertaining to the infill exception was arbitrary, capricious and unreasonable because the DEP included the 50-foot-wide right-of-way next to his home, making the closest home south of him 135 feet away; without including the street, the closest home is 85 feet away. DEP argued that the regulation is clear and unambiguous and asserted that under Dragon v. New Jersey Department of Environmental Protection, 405 N.J. Super. 478 (App. Div. 2009), it cannot waive the requirements of the infill exception. Petitioner countered that he was not seeking a waiver of the 100-foot

footprint," without addressing the alternative relief that petitioner apparently requested.

A-2880-19

requirement; instead, he was requesting that DEP reasonably interpret its regulation to exclude streets from the measurement in determining whether there is a house within 100 feet of lot lines. Because the regulation does not address his situation, he was seeking an interpretation, not a waiver, of the 100-foot requirement.

On November 25, 2019, the ALJ issued an initial decision that recommended granting DEP's motion and denying petitioner's motion.

The ALJ found that the 100-foot requirement set forth in N.J.A.C. 7:7-15.2(f)(4)(i)(3) is "a mandatory provision. ('The 100 feet shall be measured outward . . .'). Accordingly, the provision likely did not consider granting NJDEP leeway in determining where the measurement shall begin or how it must be measured."

On December 17, 2019, plaintiff filed exceptions to the ALJ's initial decision, asserting that the fifty-foot right-of-way should be excluded when measuring the distance between plaintiff's property and the nearest property to the south. On February 12, 2020, the Commissioner of DEP adopted the ALJ's initial decision, including her factual findings and conclusions of law. This appeal followed.

7

On appeal, petitioner contends that DEP's refusal to exclude the fifty-foot right-of-way from the infill calculation was arbitrary, capricious, and unreasonable. Petitioner asserts that, due to the highly developed nature of the Brant Beach section of LBI, the fifty-foot right-of-way should be excluded, as all other beachfront properties for several miles meet infill requirements and can expand waterward without limit. Petitioner also claims that DEP's application of the infill rule violated his equal protection rights.

DEP urges this court to affirm, arguing that "[t]he final decision honors not only the plain language but also the public safety purposes of the CHHA rule"; however, following oral argument, DEP's counsel provided this court with a submission "to clarify a representation . . . made during oral argument in response to a non-briefed question." The clarification explained that

> [d]uring oral argument, the court asked whether DEP approval was necessary if the [a]ppellant increased the dwelling's height without increasing the dwelling's footprint. I responded that DEP approval would be necessary and, since [a]ppellant could not meet the Coastal High Hazard Rule, [a]ppellant could not increase the building's height because it would constitute an expansion. However, after argument I reviewed the Coastal Zone Management rules, N.J.A.C. 7:7-1.1 et seq., and a DEP permit is not required to add another story to the dwelling, as long as the enlargement would not require additional parking, increase the number of dwelling units, or increase the building's footprint. N.J.A.C. 7:7-2.2(c)(4). Though it

8

was noted in argument that the municipality's zoning may address a building's height restrictions, the Coastal Zone Management rules would not impose such limitations in this case.

## II.

### A.

In enacting CAFRA in 1973, the Legislature found "that certain portions of the coastal area are now suffering serious adverse environmental effects . . . ." N.J.S.A. 13:19-2. In light of these effects, "all of the coastal area should be dedicated to those kinds of land uses which promote the public health, safety and welfare, protect public and private property, and are reasonably consistent and compatible with the natural laws governing the physical, chemical and biological environment of the coastal area."

While declaring its desire to address the adverse environmental effects of coastal area development, the Legislature also recognized economic considerations for those who inhabit the coastal areas, noting that CAFRA was also intended to

> encourage the development of compatible land uses in order to improve the overall economic position of the inhabitants of that area within the framework of a comprehensive environmental design strategy which preserves the most ecologically sensitive and fragile area from inappropriate development and provides

9

adequate environmental safeguards for the construction of any facilities in the coastal area.

[Ibid.]

As we noted in Seigel v. N.J. Dep't of Env't Prot., "[e]ach agency decision involving an application for development under CAFRA invokes these 'competing policy considerations.'" 395 N.J. Super. 604, 611 (App. Div. 2007), citing In Re Cape May County Mun. Util. Auth., 242 N.J. Super. 509, 516 (App. Div. 1990).

CAFRA requires DEP to make specific findings before granting a permit, N.J.S.A. 13:19-10, and, even if those findings are made, DEP may deny the application if "the proposed development would violate or tend to violate the purpose and intent of this act . . . ." N.J.S.A. 13:19-11.

### B.

Our review of a final agency decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). We "will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (quoting Stallworth, 208 N.J. at 194).

We accept the factual findings of an administrative agency provided they are supported by sufficient credible evidence, and we may not substitute our judgment for that of the agency. Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992). Though not bound by an agency's determination of a purely legal question, we will give "substantial deference" to an agency's reasonable interpretation of statutes an agency enforces. Richardson v. Bd. of Trs., Police & Fireman's Ret. Sys., 192 N.J. 189, 196 (2007).

Summary decision in an administrative proceeding is appropriate where the pleadings, discovery, and affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b). No genuine issue of material fact exists if "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

C.

Our review of the record indicates multiple disputes regarding material facts that rendered this case inappropriate for summary decision. Petitioner

11

contends that the "V-Zone ends around [his] front door" and that his home "is not located on a dune"; in addition, his expert certified that "the inland toe of the dune . . . ends near the waterward edge of [the] deck." DEP disagrees, asserting that petitioner's "entire project cite is a dune, as defined by N.J.A.C. 7:7-9.16. Specifically, it is a primary dune." Petitioner further contends that his property is the only property for several miles adversely impacted by DEP's interpretation of the infill exception's 100-foot requirement. DEP disputes this assertion. The decision of the ALJ did not address these disputed claims nor did DEP's final agency decision.

If a full hearing establishes that petitioner's entire property is not a primary frontal dune as defined by DEP, and if petitioner proves that his proposed expansion will not be on a dune, it appears the restrictions of the dunes rule will not apply. See Seigel, 395 N.J. Super. at 620. If the proposed expansion is not on a dune, it appears the coastal high hazard rule will not apply either. Ibid.

Just like in Seigel, DEP's denial letter in this case stated that "a practicable alternative to the proposed construction . . . would be the reconstruction of the existing home . . . construction on a lot that is not a dune, the purchase of an existing house on a lot that is not a dune or the reconstruction of an existing house on a lot that is not a dune." Id. at 621. As in Seigel, we again note that

we do not find practical or feasible any of the alternatives DEP proposed that would require petitioner to acquire additional or other property.

Also similar to Seigel, we note the apparent unfairness that would result to this particular petitioner from a strict application of the dunes rule to petitioner's application. N.J.A.C. 7:7-9.16. The regulation itself permits development on a dune where there is "no practicable or feasible alternative in an area other than a dune," and where it will not cause "significant adverse long[-]term impacts on the natural functioning of the beach and dune system." N.J.A.C. 7:7-9.16(b). It does not appear that DEP adequately considered either of these factors in making its determination.

Before us, one of the principal arguments advanced by DEP is that the "infill exception" is a rule that "enhances safety by limiting the distance first responders and occupants must traverse in the event of a severe storm or seismic event." While this argument may apply to many ocean-front properties, the record provides no evidence that it would apply to petitioner's property. Because the southern property line of petitioner's property is a 100-foot border on 33rd street, and petitioner's western property line is a 50-foot border on Ocean Boulevard, petitioner's property has three times the frontage for ingress and egress for first responders and occupants, when compared to interior (non-

corner) fifty-foot ocean-front lots. On remand, if DEP continues to maintain that denial of the infill exception to petitioner "enhances safety," DEP should present empirical or testimonial evidence to support its position.

Another principal argument advanced by DEP is that our decision in Dragon v. New Jersey Department of Environmental Protection, 405 N.J. Super. 478 (App. Div. 2009) prevents DEP from departing from the strict application of its rules. In Dragon, we held that DEP cannot use its litigation settlement process to waive strict compliance with its substantive CZM Rules in order to circumvent CAFRA's permitting requirements. Id. at 492. The facts in Dragon differ greatly from the application under review. In Dragon, the property at issue was "the most easterly lot on the block, and encroach[ed] more oceanward than any of its neighbors." Id. at 483. In addition, the petitioner in Dragon proposed a major extension and major expansion of his footprint. Id. at 484.

In addition, we note that we clarified in Dragon that the decision did not concern DEP's "power to enter into settlement negotiations" but that a settlement cannot be used as a means of circumventing substantive permitting requirements. Id. at 492. In appropriate cases, we have recognized "the persuasiveness of the argument that an agency has inherent power to waive de minimus violations of objective standards." SMB Assocs. v. N.J. Dep't of Env't.

Prot., 264 N.J. Super. 38, 59 (App. Div. 1993) aff'd sub nom. SMB Associates (Anchoring Point) v. New Jersey Dep't of Env't. Prot., 137 N.J. 58 (1994); see also In re Highlands Master Plan, 421 N.J. Super. 614, 632-33, (App. Div. 2011) (citations omitted) (noting "[t]he power to waive administrative rules may be used solely to deal with the unusual circumstances of an individual regulated party.").

In sum, we do not view Dragon as precluding a favorable ruling in petitioner's favor if the record on remand establishes that the relief granted does not adversely impact the safety of first responders or occupants and results in minimal environmental impact that is equal to, or less, than the impact that would result if petitioner proceeds with an alternative that does not require DEP approval, such as adding another story to his home, as permitted by N.J.A.C. 7:7-2.2(c)(4).  Even assuming DEP was correct in determining that the entirety of petitioner's property is a dune, we are hard-pressed to understand how the enclosure of a portion of petitioner's existing elevated deck could have a significant adverse impact beyond what DEP acknowledges is permitted without DEP approval.[3]

---

[3] We further note that DEP regulations allow for an exception to the dunes rule for "the enclosure of a deck, patio, or porch," provided ". . . [t]he deck, patio, or

Our Supreme Court has noted that [a]ny administrative agency in determining how best to effectuate public policy is also limited by applying principles of fundamental fairness." Dep't of Env't. Prot. v. Stavola, 103 N.J. 425, 436 n.2 (1986). "When specific parties are particularly affected by a proposed rule, fair play and administrative due process dictate that an agency must conscientiously concern itself with and make reasonable efforts to accommodate the rights and interests of the affected individual and genuinely account for the individualized effect of its proposed action." Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 345 (1981) (Handler, J., concurring).

---

porch enclosure is located on the non-waterward side of the single[-]family home." N.J.A.C. 7:7-6.5(d)(i)(ii). The record before us includes no evidence that enclosure of the waterward side of petitioner's deck would have any adverse environmental impact.

The National Weather Service's High Wind Safety Rules describe the dangers to life and property posed by high winds and emphasize the importance of removing or securing objects, such as furniture, "that could blow away and cause damage or injury." High Wind Safety Rules, NAT'L WEATHER SERV., http://www.weather.gov/mlb/seasonal_wind_rules High Wind Safety Rules (last visited Nov. 17, 2021). Obviously, a deck facing the ocean, like petitioner's, would be particularly vulnerable to high winds in a storm. Allowing the enclosure of the waterward deck would eliminate the dangers posed by deck furniture on an open, unenclosed deck.

A-2880-19

Petitioner also asserts that DEP's application of the infill rule violates his equal protection rights. Petitioner contends that DEP has effectively placed him into a "class of one," where "hundreds of other beach front homeowners" in the Brant Beach section can expand their homes, while he cannot.

Petitioner raised this equal protection argument in his reply brief. The record does not reflect that petitioner raised this argument in the administrative proceedings under review. Thus, we decline to address the equal protection issue. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973). If the matter does not resolve, we do not foreclose petitioner from raising this issue on remand.

Given the disputed issues of material facts and the incomplete record, we are constrained to reverse the order under review and remand this matter for a full adjudicatory hearing before the ALJ. If petitioner requests, the ALJ shall permit petitioner to file an amended application to clearly state the exact nature of any alternative relief petitioner is requesting. See In re State & Sch. Emps.', 233 N.J. at 285 (requiring remand hearing to develop "a proper record to permit meaningful judicial review."). We conclude that is the appropriate remedy here.

We therefore reverse and remand the matter for further proceedings consistent with this opinion.

17

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                                A-2880-19