# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1609-24

J.P.,[1]

     Plaintiff-Respondent,

v.

E.M.,[2]

     Defendant-Appellant.

_____

     Submitted January 6, 2026 – Decided February 2, 2026

     Before Judges Sumners and Augostini.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-0609-25.

     Freeman & Patel, LLC, attorneys for appellant (Jarred S. Freeman, on the brief).

---

[1] We use initials to protect the confidentiality of these parties and the proceedings. R. 1:38-3(d)(10).

[2] The Final Restraining Order (FRO) refers to defendant by the initials "M.E." which inverts his first and last name. Therefore, we refer to defendant by the correct initials "E.M."

Berse Law, LLC, attorneys for respondent (Samuel J. Berse, on the brief).

PER CURIAM

Defendant E.M. appeals from the FRO entered against him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. After considering the record in light of the parties' arguments and applicable law, we affirm the FRO.

I.

We discern the following facts from the trial record. Plaintiff J.P. and defendant were in a relationship that ended in 2013. They have a sixteen-year-old son together.

On October 2, 2024, plaintiff filed a domestic violence complaint and obtained a temporary restraining order (TRO) against defendant, alleging the predicate act of harassment on two separate dates. Plaintiff asserted that while she was in Puerto Rico, defendant sent offensive text messages threatening to leave their son outside of his home. Thirteen days earlier, plaintiff alleged that defendant repeatedly called her in the early morning hours demanding she pick him up or else their son would hate her for not helping him. After acquiescing

2

and picking him up, plaintiff alleged that defendant grabbed her arm repeatedly during the drive.

Plaintiff's complaint detailed a history of domestic violence from November 2016 to July 2024. Plaintiff alleged prior acts of domestic violence that included physical violence, repeated threats to stop child support payments, name-calling and other vulgar and degrading communications, attempts to monitor her whereabouts, and instances of showing up uninvited at plaintiff's home.

At the FRO hearing on January 9, 2025, both parties testified. Plaintiff admitted several exhibits into evidence. Plaintiff stated that she needed an FRO because she no longer:

> want[ed] to live in fear [] that every time [she] didn't oblige to one of [defendant's] demands [she would] either. . . get insulted, degraded, or he[] [would] show up at [her] house and do something to [her] . . . [or] curse [her], or use [their] son . . . and manipulate him to have [their] son turn into who he was physically to [her].

Plaintiff explained that after seventeen years of being "physically, emotionally, [and] psychologically abused," she wanted it to be done and to be left alone. Plaintiff added that it took her ten years after their relationship ended to "work up the courage" to request an order of protection.

A-1609-24

Plaintiff admitted into evidence a photograph of her bruise and "busted lip," which were caused by defendant physically attacking her in 2016.[3] She also admitted two screenshots of her call log from repeated calls defendant made to her on September 4, 2022, between three and four in the morning, as part of the prior history, and from September 14, 2024, beginning around 5:30 a.m.—both times while plaintiff was asleep. Plaintiff admitted an audio recording of one of defendant's messages from the early morning hours of September 4, 2024. Lastly, plaintiff produced a December 4, 2019 email from defendant in response to her request not to call her phone. Defendant stated:

> [l]ook you fat, ugly pig, no one gives a fuck about you or is calling you. You obviously saw that it was a mistake, so get a fucking life.[4]

Defendant denied harassing plaintiff and claimed that he was "not trying to hurt her." Defendant admitted "say[ing] certain things that [he] shouldn't," have and claimed they were "just words [he] was saying." He testified that all communications between them were about their son. Defendant asserted that

---

[3] Defendant did not provide any of the trial exhibits in his appendix.

[4] Plaintiff was permitted to read this email into the record.

A-1609-24

the parties mutually harassed one another and both had called the police on the other.

The court found both parties credible and underscored that this case had "to be looked at through the lens of a long history of domestic violence and a cycle of domestic violence." The court found that defendant admitted saying most of the statements plaintiff alleged, such as "you fat, c-u-n-t, and . . . f-ing bitch, f both of you." He further admitted making threats to cut off child support as leverage against plaintiff. The court found that defendant made calls to plaintiff at extremely inconvenient times on September 14, 2024, and in the past. In terms of his intent in making these communications, the court found that they were made for no other reason than to harass plaintiff. The court did not credit defendant's claim that these communications were always regarding their son; instead, it found that defendant had no other purpose for making those statements other than to alarm or annoy plaintiff.

Having found plaintiff had proven the predicate act of harassment by a preponderance of the evidence, the court held that an FRO was necessary to prevent future acts of domestic violence. The court found a history of domestic violence that included physical violence and ongoing harassing communications. The court determined that plaintiff needed to be protected

A-1609-24

from future harassing communications from defendant and thus granted her request for the FRO.

On appeal, defendant contends the evidence adduced at trial fails to support the issuance of an FRO. He further argues the matter should have been transferred to another county because, he alleges, plaintiff is a Union County judiciary employee.

## II.

### A.

Our review of an FRO is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "Deference is especially appropriate [in bench trials] 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Therefore, we will not overturn a judge's factual findings unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to

A-1609-24

offend the interest of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of America, 65 N.J. 474, 484 (1974)). However, we accord no deference to the trial court's legal conclusions and review these legal conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 383 (2016) (citing D.W. v. R.W., 212 N.J. 232, 245-46 (2012)).

In deciding whether to grant an FRO, a trial court must engage in a two-step inquiry. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. The judge must construe any such alleged acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998) (citing N.J.S.A. 2C:25-29(a)(1)).

If finding a predicate act, the judge next determines whether a restraining order is necessary to protect plaintiff from immediate harm or further abuse. Silver, 387 N.J. Super. at 127. "[T]he guiding standard is whether a restraining

A-1609-24

order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)] (1) to -(29) [(a)] [(7)]." Ibid.

B.

We begin by addressing defendant's contention that the evidence adduced at trial does not support the issuance of the FRO. Defendant argues that the trial court erred in finding harassment because there was insufficient evidence to find that he acted with the requisite intent. We disagree. We are satisfied that the record contains adequate, substantial, and credible evidence to support the court's finding of harassment and the need for an FRO.

In this case, the trial court found defendant committed the predicate act of harassment, one of the delineated offenses under the PDVA. A person is guilty of harassment under N.J.S.A. 2C:33-4:

> [I]f, with purpose to harass another, [a person]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

In determining whether the harassment statute has been violated, the court may consider the totality of the circumstances. Cesare, 154 N.J. at 404 (citing State v. Hoffman, 149 N.J. 564, 584-85 (1997)). A finding of a defendant's purpose to harass may be inferred from the evidence presented, and from common sense and experience. H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (citing Hoffman, 149 N.J. at 577).

In the context of prior incidents of domestic violence and within the totality of the parties' relationship, the court properly evaluated defendant's conduct on September 14, 2024, and September 27, 2024, finding that defendant purposefully communicated with plaintiff intending to annoy or alarm her and for no other valid reason.

The court found that defendant was upset by plaintiff's refusal to allow their son to sleep at his home on September 27, 2024, even though she was away, and in response to this refusal, he sent a "barrage of harassing communications to [] plaintiff." Evaluating defendant's conduct considering the parties' relationship, the court credited plaintiff's description of defendant's past verbal abuse, noting:

> there's been a course of alarming conduct where a disagreement arises and it just spirals out of control where [] defendant makes or causes to be [made] communications that are clearly meant to harass

another. And there's no other purpose other than to cause annoyance or alarm.

Additionally, the evidence established that some of defendant's communications were made at extremely inconvenient hours, again designed to annoy or alarm plaintiff. Indeed, defendant admitted calling plaintiff at inconvenient times and saying things he ought not to have said. Thus, we discern no error in the court's finding of harassment under N.J.S.A. 2C:33-4(a) and (c).

After finding defendant committed the predicate act of harassment, the court analyzed the second prong of Silver to determine whether an FRO was necessary to protect plaintiff from further abuse. Crediting plaintiff's description of past abuse, which included defendant slapping and injuring her, attempting to track her whereabouts, and sending her repeated harassing communications—long after their relationship had ended—clearly demonstrated the need for an FRO. The PDVA, "[a]t its core," provides victims of domestic violence the right to be left alone. Hoffman, 149 N.J. at 584. Thus, the trial court's conclusion that the FRO was necessary was well-grounded in the competent evidence.

C.

We address next defendant's argument that plaintiff's domestic violence matter should not have been processed and adjudicated in Union County because

10

plaintiff is a "Union County [j]udiciary [e]mployee." Defendant urges us to take judicial notice that plaintiff is employed as a Union County-based Family Service Specialist with the Department of Children and Family Services.

Defendant states that this issue was not raised below. However, following the entry of the FRO on January 9, 2025, both parties appeared for a subsequent hearing on June 26, 2025. The amended FRO reflects that defendant "raised concerns" seemingly for the first time, "that this matter should not be heard here in Union [County]because [] plaintiff works for [the Division of Child Protection and Permanency] (Division) in Union County." Although no formal application had been filed, the court heard arguments on this conflict issue. Citing Canon 2, Rule 2.1 of the Code of Judicial Conduct and Denike v. Cupo, 196 N.J. 502, 507 (2008), the trial court found no conflict or appearance of impropriety warranting any relief, including but not limited to, transferring venue. The court reasoned that plaintiff does not appear in court nor does the court handle matters involving the Division's Children In Court responsibilities, which plaintiff is involved with.

Defendant has not appealed the June 26, 2025 order, and his notice of appeal and case information statement confines his appeal to the January 9, 2025 FRO. Therefore, this issue is not properly before us. R. 2:5-1(f)(2)(ii); see

Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002).

Nor has defendant provided us with the transcript of the June 26, 2025 hearing. Our review is generally limited to the record on appeal—i.e., what is contained in the appendices and transcripts. Rendine v. Pantzer, 276 N.J. Super. 398, 426 (App. Div. 1994), aff'd 141 N.J. 292 (1995); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:6-1 (2026); and cmt. 1 on R. 2:5-4 (2026). Moreover, failing to provide the relevant transcript of the June 26, 2025 hearing contravenes Rule 2:5-1(g), Rule 2:5-3, Rule 2:5-4(a), and Rule 2:6-1(a)(1). Accordingly, we are not "obliged to attempt review of an issue when the relevant portions of the record are not included." Community Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (citing Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002); Johnson v. Schragger, 340 N.J. Super. 84, 87 n.3 (App. Div. 2001)).

We note, however, that although defendant asserts plaintiff is a judiciary employee, it appears from defendant's brief and the June 26, 2025 amended FRO that this assertion is incorrect. Plaintiff appears to be an employee of the

Division, an agency within the Department of Children and Families, and not an employee of the judiciary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13

A-1609-24