**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1752-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BLAKE RUSSO,

     Defendant-Appellant.

_____

Submitted March 4, 2025 – Decided March 17, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 23-04-0232.

Jacobs & Barbone, PA, attorneys for appellant (Louis M. Barbone, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Kaili E. Matthews, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Blake Russo appeals from the February 5, 2024 Law Division order denying his motion to withdraw his guilty plea. After reviewing the record in light of the governing legal principles and arguments of the parties, we affirm.

I.

On January 16, 2023, defendant erratically operated a vehicle in the Township of Dennis and traveled at a high rate of speed, eluding police after he was signaled to stop. Defendant placed others in danger by driving at approximately 100 miles per hour to evade police apprehension. The officers terminated the pursuit because of the risk of danger to others.

On April 4, a Cape May County grand jury indicted defendant for second-degree eluding police, N.J.S.A. 2C:29-2(b). Defendant was ultimately arrested while in prison for a parole violation. On October 31, defendant entered a negotiated plea agreement with the State. Defendant pleaded guilty to second-degree eluding after meeting and completing plea forms with plea counsel. Plea counsel advised the court he had discussed the forms with defendant, and they "did go over the supplemental plea form for eluding" as well.

As part of the negotiated plea, the State agreed not to seek an extended term of imprisonment as a persistent offender. The plea agreement memorialized that the State would argue for a seven-year prison term, and

defendant would argue for a five-year prison term. Defendant's plea form indicated that he was currently serving a custodial sentence and acknowledged his guilty plea may affect his parole eligibility.

The court questioned defendant under oath to confirm he was pleading freely and voluntarily and not under the influence of any substance that would impair his ability to make a decision. During the plea colloquy, the following exchange occurred:

> THE COURT: Are you entering this plea today, because you believe you are guilty of this crime?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Are you satisfied with the plea agreement?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Are you satisfied with the[] services, . . . provided to you by your attorney?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you have any remaining questions you would like to ask your attorney before I continue?
>
> DEFENDANT: No, Your Honor.
>
> . . . .

3

THE COURT: All right.  Let[ us] take a look at your plea forms now . . . . Sir, did you have an opportunity to read and review the plea forms with [plea counsel]?

DEFENDANT:  Yes.

THE COURT:  Did you understand the plea forms when you reviewed them with him?

DEFENDANT:  Yes.

    . . . .

THE COURT:  When you answered the questions on the plea forms, sir, did you do so truthfully?

DEFENDANT:  Yes.

After confirming defendant's voluntary waiver of his rights, understanding of the plea agreement, and potential sentencing exposure, the court asked defendant whether he wanted more time to speak with his attorney.  Defendant advised that "in a perfect world" he would have had more time to discuss the plea with his fiancé but relayed that he understood he did not "have that option." The court inquired about defendant's understanding of his options, and he responded, "Because I am taking th[e] [plea] deal.  Through every step of this process, I just keep thinking of my daughter . . . . She[ is] ten months old.  This decision is going to affect her either way."  He indicated he was "a mess" but was "inclined to take" the plea deal.  Plea counsel represented to the court that

4

it was understood that the State's plea offer, based on the pretrial memorandum, would expire that day, and he had "explain[ed] that to [defendant]." Further, plea counsel asserted they "ha[d] gone over the proofs of this case on numerous occasions," and defendant faced greater sentencing exposure.

The prosecutor confirmed that under the negotiated plea, defendant avoided exposure to a discretionary extended term, as defendant had previously been convicted of multiple eludings. The prosecutor represented that "[defendant has] known it for quite some time, so [he] ha[d] no problem with [defendant] going downstairs and considering it a little bit longer if [the court] would allow. But [the prosecutor] d[id not] want to risk coming back in November and . . . [defendant] not being [t]here." The prosecutor represented to the court that defendant had a history of non-appearances. Plea counsel explained that "all [of] these things were contemplated," and he had "taken a substantial amount of time with [defendant]." Defendant affirmatively agreed with plea counsel's statement. The court further questioned defendant ensuring his desire to plea:

> THE COURT: All right. [Defendant], do you want to continue with your plea today?
>
> DEFENDANT: Yes, Your Honor.

5

THE COURT: Okay. We left off with me asking whether you were comfortable and agreeing to giving up the rights that I put on the record to enter this guilty plea today. Are you agreeing to give up all those rights, sir, and proceed?

DEFENDANT: Yes, Your Honor.

THE COURT: All right. [Defendant], once your plea is accepted, ordinarily you [would not] be permitted to take your plea back, and the case will proceed to sentencing at a future date. Now, you face, as a result of your guilty plea and certainly depending on your criminal record for a second-degree crime, up to ten years [in] New Jersey State Prison. The State is recommending again seven, and your attorney[ is] going to argue for five at the time of sentencing. Do you have any questions about anything that I [have] just reviewed with you?

DEFENDANT: No, Your Honor.

Defendant raised no further concerns or issues with the court, did not utilize the opportunity to take a break for further consideration and discussion of the plea agreement with plea counsel, and admitted to eluding police.

On January 27, 2024, defendant's new counsel moved to withdraw the guilty plea. In support of his motion, defendant provided a certification that he had a history of mental illness, believed plea counsel was pursuing a mental disease or defect defense, and had "no idea. . . [he] was going to be entering a plea agreement until the day [he] did it."

A-1752-23

On February 5, after argument, the court denied defendant's motion. Defendant's motion counsel argued defendant "did not have the ability to consult with [plea] counsel" and believed he would be able "to assert a defense of mental disease [or] defect." Motion counsel conceded that plea counsel had visited defendant in jail and that defendant and plea counsel had telephonic communications. Motion counsel argued defendant only learned of the plea offer "ten minutes [before going] on the record." The prosecutor argued plea counsel had actively negotiated the plea deal over a period of time, and the negotiated offer was not a surprise, referencing that there were "many proceedings."

The court recalled that it had taken defendant's plea and was familiar with the proceeding. After citing the legal framework for the court's review of a motion to withdraw a plea under the four factors stated in State v. Slater, 198 N.J. 145, 966 (2009), it denied the motion, finding defendant failed to meet his burden. Regarding factor one, the court stated that "defendant fail[ed] to assert any colorable claim of innocence" or provide a sufficient basis to "justify a withdrawal of the guilty plea." The court noted defendant "clearly admitted to the elements of second-degree eluding."

A-1752-23

Regarding the second factor, the court found defendant's mental health records,[1] which the court reviewed in detail, were from approximately twenty years ago. The court found the medical records did not include a diagnosis of any major mental illness, with the exception of the 2003 record, which "diagnos[ed] . . . major depressive disorder." It also noted defendant was diagnosed over twenty years ago with "attention deficit hyperactivity disorder [(ADHD)] and oppositional defiant disorder." After reviewing the Department of Correction's (DOC) one-page medical record dated November 13, 2023, the court determined defendant had not been diagnosed with any major mental illnesses, had no "present diagnosis of anxiety," and only may have had ADHD. Defendant was not on any medication. The court also found that defendant never mentioned "concerns . . . with a defense" nor "mental health records that he

---

[1] We note that defendant has not submitted the mental health records for our review. Rule 2:5-4(a) states in relevant part: "The record on appeal shall consist of all papers on file in the court . . . , with all entries as to matters made on the records of such courts." See also R. 2:6-1(a)(1)(I) (stating that the appendix must contain parts of the record "essential to the proper consideration of the issues"). Defendant's merits brief and the motion transcript reference specific medical documents defendant did not provide on appeal. "We are not 'obliged to attempt review of an issue when the relevant portions of the record are not included.'" State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (quoting Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005)).

want[ed] the [c]ourt to consider." Therefore, it determined the evidence of defendant's mental illness did not constitute a "fair and just reason[] for withdrawal" of his plea, and defendant did not show that he was "forced into th[e] plea."

The court found factor three was neutral, though defendant had clearly entered into a plea agreement. It determined factor four weighed in favor of defendant because the State would not suffer any real prejudice if the plea was set aside, and defendant could be subject to greater penal consequences as a persistent offender. After weighing the four <u>Slater</u> factors, the court denied defendant's motion, finding he failed to demonstrate cause for the withdrawal of his guilty plea.

The court also considered defendant's claims of ineffective assistance of counsel (IAC) under the court rules and the two-prong test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), as adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987). The court found defendant failed to demonstrate IAC by plea counsel because defendant failed to show any performance deficiency or prejudice. It noted defendant did not demonstrate he had raised a mental disease or defect defense. The court concluded it had provided defendant with sufficient time to meet with plea counsel to discuss the

plea agreement, and defendant had declined more time to discuss the offer that day.

At sentencing, defendant argued mitigating factors: one, N.J.S.A. 2C:44-1(b)(1) (defendant's conduct neither caused nor threatened serious harm); two N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause or threaten serious harm); four, N.J.S.A. 2C:44-1(b)(4) (substantial grounds tending to excuse or justify the defendant's conduct); eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was a result of circumstances unlikely to recur); and nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude indicated he is unlikely to commit another offense). The State argued aggravating factors: three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record and the seriousness of the offenses); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter).

The court sentenced defendant to a seven-year term of imprisonment. The court noted defendant was thirty-three and had twenty-four prior arrests. It highlighted that defendant had four convictions for driving under the influence, two prior criminal convictions for burglary, a criminal conviction for possession of a controlled dangerous substance, and three prior second-degree eluding convictions. After the court found mitigating factor nine and aggravating factors

three, six, and nine applied, it determined the aggravating factors outweighed the mitigating factor.

Defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.

POINT II

THE DEFENDANT MAINTAINS A DEFENSE ON THE MERITS – AN AFFIRMATIVE DEFENSE OF MENTAL DISEASE OR DEFECT.

II.

We review a trial court's denial of a defendant's motion to vacate a guilty plea after a qualitative assessment for an abuse of discretion. State v. Tate, 220 N.J. 393, 404 (2015). The "denial of [a] defendant's request to withdraw his [or her] guilty plea will be reversed on appeal only if . . . the [trial] court's decision [was] clearly erroneous." State v. Lipa, 219 N.J. 323, 332 (2014) (quoting State v. Simon, 161 N.J. 416, 444 (1999)). We, however, review a trial court's legal conclusions de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

Pursuant to Rule 3:21-1, a defendant may move "to withdraw a plea of guilty . . . before sentencing." The trial court may grant a motion to withdraw a

guilty plea filed before sentencing in the "interests of justice." R. 3:9-3(e). The court's decision on whether to allow a defendant to withdraw a guilty plea requires consideration of four factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 157–58. The court must "consider and balance . . . [these] factors in evaluating motions to withdraw a guilty plea." Id. at 157.

III.

We address together defendant's contentions that the court erroneously denied his motion to withdraw his guilty plea and failed to consider the "good faith . . . plausible basis" for his mental disease or defect defense. Defendant argues the court abused its discretion because he sufficiently demonstrated a documented mental illness that serves as a colorable claim of innocence and raised the documented mental illnesses with plea counsel as a defense. We are unpersuaded.

We begin by recognizing that the court was familiar with the facts and testimony surrounding defendant's plea, as it had presided over defendant's plea hearing. After a detailed review of defendant's plea and motion papers, the court found defendant pleaded freely and voluntarily. A review of the plea colloquy

12

confirms the court went further than the standard plea questions to ensure defendant understood the implications of the plea bargain, and he willingly pleaded guilty. "A trial [court's] finding that a plea was voluntarily and knowingly entered is entitled to appellate deference so long as that determination is supported by sufficient credible evidence in the record." Lipa, 219 N.J. at 332. The record amply supports the court's conclusion.

Regarding the first Slater factor, the court soundly determined that defendant asserted "little more than a bare assertion of innocence." The court highlighted that defendant "clearly admitted" to eluding. Further, on the day of the plea hearing, defendant declined the opportunity to take more time to speak with plea counsel before his detailed plea allocution. We observe that "[a] colorable claim of innocence is one that rests on 'particular, plausible facts' that, if proven in court, would lead a reasonable factfinder to determine the claim is meritorious." State v. Munroe, 210 N.J. 429, 442 (2012) (quoting Slater, 198 N.J. at 159). "It is more than '[a] bare assertion of innocence,' but the motion judge need not be convinced that it is a winning argument . . . ." Ibid. (alteration in original). Defendant does not refute his plea recitation satisfied each element of second-degree eluding.

We next consider defendant's claim under Slater factors one and two that before the court and with plea counsel, he sufficiently raised a mental disease or

defect defense, which negated the requisite mental element of eluding. See N.J.S.A. 2C:29-2(b). Again, defendant did not provide on appeal the medical records submitted to the court. Notably, defendant does not directly refute the court's finding that the medical records submitted, except the one-page 2023 DOC medical record, were about twenty years old and showed no major mental illness diagnosis. The court specifically found that the one-page 2023 DOC medical record also failed to diagnose defendant with any of the disorders alleged in his affidavit. The court's accurate recitation on the record supports its conclusion that defendant lacked a colorable claim of innocence. Slater, 198 N.J. at 157. Defendant has failed to demonstrate a material fact supporting that he had: raised a mental disease or defect defense with plea counsel; a mental disease or defect defense warranting the withdrawal of his plea; or other legitimate reasons to set aside his plea. We discern no abuse of discretion in the court's determination that the Slater factors did not militate in favor of allowing defendant to withdraw his plea.

We next turn to defendant's IAC argument, which is argued in conjunction with his claims under the Slater factors. "To establish a prima facie case of ineffective assistance of counsel, a defendant 'must show that counsel's performance was deficient' and that 'the deficient performance prejudiced the

defense.'" State v. Howard-French, 468 N.J. Super. 448, 469 (App. Div. 2021) (quoting Fritz, 105 N.J. at 52). "[IAC] claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." State v. Hess, 207 N.J. 123, 145 (2011) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). "[W]e routinely decline to entertain [IAC] claims on direct appeal because those claims 'involve allegations and evidence that lie outside the trial record.'" Ibid. (quoting Preciose, 129 N.J. at 460). However, a court may consider an IAC claim on direct appeal if the record below "discloses the facts essential to [defendant's] [IAC] claim." See State v. Allah, 170 N.J. 269, 285 (2002) (evaluating a defendant's IAC claim on direct appeal for failure to raise a meritorious double jeopardy defense); see also State v. Veney, 409 N.J. Super. 368, 387 (App. Div. 2009) ("[W]hen the trial itself provides an adequately developed record upon which to evaluate defendant's claims, appellate courts may consider the issue on direct appeal." (quoting State v. Castagna, 187 N.J. 293, 313(2006))). As the record of defendant's plea was sufficiently developed, we consider defendant's IAC arguments on the merits.

We concur with the court's IAC conclusion that assuming defendant advised plea counsel of the mental disease or defect defense, defendant proffered no reliable medical evidence to support that counsel was deficient in failing to

15

pursue the alleged defense. Defendant's claims that plea counsel should have secured records establishing "his major mental illness[es] through prior private treaters prior to [defendant's] incarceration on the parole warrant" are unsupported. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690.

The court's finding that defendant failed to make a minimum showing that plea counsel's performance was deficient and that any deficient performance prejudiced him is amply supported. Defendant failed to demonstrate any genuine material fact that he suffered mental illnesses affecting his faculties and that plea counsel was deficient in failing to investigate and raise the defense. Therefore, the court's finding that defendant failed to satisfy both prongs of the test set forth in Strickland, 466 U.S. at 687, as adopted by Fritz, 105 N.J. at 58, by a preponderance of the evidence is amply supported by the record. In sum, we reject defendant's arguments that the court ignored undisputed facts out of hand and should have found plea counsel was ineffective.

Further, while defendant avers that the State acted unreasonably on October 31, 2023 by advising defendant the negotiated plea offer would be withdrawn that day, he has failed to establish any impropriety concerning the

16

State's plea cutoff. Cf. State v. Antieri, 186 N.J. Super. 20, 25 (App. Div. 1982). The State was permitted to assert a plea cutoff as defendant had been indicted approximately seven months earlier, and the court was setting a trial date. See R. 3:9-3(g).

Finally, defendant's argument that the court only provided him "three days to file" a merits brief before the February 5 motion return date is contradicted by the record. Defendant's affidavit avers that he contemplated filing a motion to withdraw his plea in November and December of 2023 and discussed filing it with plea counsel, but allegedly plea counsel was adamant that defendant "should not file a motion." In mid-December of 2023, defendant began discussions with motion counsel about filing the motion, and he "retained motion counsel on or about January 15, 2024." Motion counsel similarly certified to the timeframe and that he "[i]mmediately . . . secured all discovery and court documents in . . . defendant's possession." Defendant remained pending sentence for almost three months. Motion counsel filed defendant's notice of motion to withdraw the plea on January 27. Thus, the record establishes that defendant had more than two weeks to submit his merits brief.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Harley

Clerk of the Appellate Division

18