**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3002-23

PETER TONG,

     Plaintiff-Respondent,

v.

ECO MORRIS COUNTY
CONSTRUCTION, LLC, GO PRO
CONSTRUCTION, INC., GO PRO
CONSTRUCTION GROUP, LLC,
SERVET HUSI, ELVIRA
RUSTEMLLIU, and ERMAL
RESTEMLLIU, a/k/a ERIK,

     Defendants-Appellants.

_____

Submitted April 1, 2025 – Decided May 13, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2706-23.

Bedi Rindosh, attorneys for appellants (Prabhkaran S. Bedi, on the briefs).

Pickus & Landsberg, attorneys for respondent (Evan N. Pickus, on the brief).

PER CURIAM

Defendants Eco Morris County Construction, LLC (Eco Morris), Go Pro Construction, Inc., Go Pro Construction Group, LLC (collectively Go Pro), Servet Husi, Elvira Rustemlliu, and Ermal Rustemlliu a/k/a Erik[1] appeal from the April 30, 2024 Law Division order denying their motion to vacate default judgment entered in favor of plaintiff Peter Tong. Having reviewed the record, parties' arguments, and applicable legal principles, we reverse.

I.

Plaintiff owned a residential home in the Township of East Brunswick that required roof repairs. Plaintiff contacted Eco Morris to perform the repairs. Plaintiff met Ermal, a representative of Eco Morris, to discuss the necessary work. Plaintiff thereafter entered into a contract in the amount of $11,700 with Eco Morris to replace the roof and install new gutters. The contract provided that Eco Morris' "estimate for material and labor [wa]s firm as quoted." It further stated that "[w]hen any roof tear-off is involved, our price may be increased due to unforeseen and/or hidden damage," and "the [c]ustomer shall

_____

[1] Because Elvira Rustemlliu and Ermal Rustemlliu share a surname, we refer to them by their first names for clarity. We intend no disrespect. Also, while we recognize plaintiff knew Ermal Rustemlliu as Erik, throughout the opinion we use Ermal to avoid confusion.

2

become fully responsible for the additional cost of material and/or labor occasioned by the unforeseen or hidden damage."

The parties dispute what occurred after Eco Morris began the work in April 2023. Plaintiff alleged that after Eco Morris' crew removed a portion of the roof, Ermal told plaintiff there was rot and mold. Ermal informed plaintiff that Go Pro could perform the necessary work for the cost of $68,000, and plaintiff could obtain a loan through a "home improvement loan" company. Plaintiff allegedly obtained a loan for $55,000 and believed defendants were connected to the "home improvement loan" company.

After Eco Morris removed the plywood from the roof, Ermal told plaintiff additional work had to be performed to the roof structure and chimney for an additional cost of $68,000. On April 5, 2023, plaintiff signed a second contract with Go Pro for $170,000 to allegedly cover the repair work, including "replace[ment of] the front stoop." Plaintiff believed he agreed to all the newly discovered necessary work and "to take out a loan in the future." Plaintiff alleged Ermal also requested "an additional $10,000 [in] cash" and advised him mold was discovered behind the siding. On April 6, plaintiff signed a third contract with Go Pro to remove the siding and remediate the mold for an additional $72,500. The next day, plaintiff called Ermal, advising him that only

  A-3002-23

the roof work should be completed. Ermal responded that plaintiff was bound by the contracts and had to complete the loan process to secure the available money to pay for defendants' completed work.

Plaintiff alleged Ermal continued to demand payment for the work performed and offered to buy plaintiff's house. Plaintiff paid $51,500 in cash and believed he was "possibly obligated . . . [for] loans in the amount of $165,000 plus interest."

On May 12, plaintiff filed a complaint. Plaintiff served Go Pro and Elvira on June 8. On June 12, plaintiff filed an amended complaint, asserting claims for: reformation of the contracts based on plaintiff's unilateral mistake; unconscionability permitting rescission of the contracts; violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228; fraud; and piercing the corporate veil. Plaintiff served Servet on June 19 and served Ermal on June 16.[2] On July 20, plaintiff's counsel received an unsigned email request from Go Pro and Eco Morris seeking a "two[-]week extension" to file a responsive pleading, which plaintiff agreed to. After defendants failed to file a responsive

---

[2] It is unclear whether all defendants were served with plaintiff's amended complaint.

4

pleading, plaintiff requested default, which the court entered.  On September 14, plaintiff moved for default judgment.

On October 6, the court granted plaintiff's motion for default judgment for a sum certain under Rule 4:43-3(b) in the amount of $653,000 against defendants.  The court's order stated the motion was "meritorious on its face and . . . unopposed" and adopted plaintiff's "reasons set forth in [his] moving papers."  On November 15, defendants moved to vacate default judgment, which plaintiff opposed.  In support of defendants' motion, Ermal certified he was the manager of Go Pro and explained that the failure to file an answer was a mistake because:  English is not his primary language; he had limited "experience with legal documentation and court procedures"; the business was "unsophisticated with legal documents"; he "was out of the country after th[e] lawsuit was filed"; and "the failure to respond to the [c]omplaint was . . . not willful."  He further certified that Eco Morris completed work at plaintiff's home, the project "required extensive mold remediation," and plaintiff entered the contracts and financed the work through a third party.  Five months later, after carrying the motion multiple cycles on its own initiative, the court did not afford oral argument as defendants requested and issued an order denying defendants'

motion to vacate default judgment. The court found "there [wa]s no excusable neglect in this matter."

On appeal, defendants contend the trial court erred in denying their motion to vacate default judgment because they demonstrated: excusable neglect and meritorious defenses under Rule 4:50-1(a); and equity and justice warranted vacating the default judgment under Rule 4:50-1(f).

II.

We review a motion to vacate final judgment under Rule 4:50-1 for an abuse of discretion. 257-261 20th Ave. v. Roberto, 259 N.J. 417, 436 (2025). "A court abuses its discretion 'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 262 (App. Div. 2024) (quoting Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024)).

"Relief under Rule 4:50-1, except for relief from default judgments, is 'granted sparingly,' and in exceptional circumstances." MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 333 (App. Div. 2023) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)), certif. denied, 255 N.J. 447 (2023). "The decision whether to vacate a [default] judgment on one of the six . . . [Rule 4:50-1]

grounds is a determination . . . [that is] guided by principles of equity." Ibid.

(quoting F.B., 176 N.J. at 207).

Rule 4:50-1 provides the following:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

Rule 4:50-2 provides that "[t]he motion shall be made within a reasonable time, and for reasons (a), (b) and (c) of R[ule] 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken." "[A] reasonable time is determined based upon the totality of the circumstances." Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 296 (App. Div. 2021).

Under Rule 4:50-1(a), "a defendant seeking to reopen a default judgment because of excusable neglect must show that the failure to answer was excusable

under the circumstances and that a meritorious defense is available." Id. at 298 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 284 (1994)). "'Excusable neglect' may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 468 (2012) (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 335 (1993)).

Rule 4:50-1(f) is a "catch-all" provision incapable of categorization. DEG, LLC v. Township of Fairfield, 198 N.J. 242, 269-70 (2009). It allows for relief in "exceptional situations" where hardship has been shown and, as such, its "boundaries 'are as expansive as the need to achieve equity and justice.'" Roberto, 259 N.J. at 436 (quoting Hous. Auth. of Morristown, 135 N.J. at 290). We have further recognized "important factors" to be considered in deciding whether relief in such circumstances should be granted, including "(1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party." Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995).

A-3002-23

III.

Defendants contend reversal is warranted because they demonstrated under Rule 4:50-1(a) that: their failure to timely serve a responsive pleading was a mistake, inadvertent, and excusable neglect; and they have meritorious defenses. Specifically, defendants argue the totality of facts support excusable neglect, which the court failed to consider. Regarding the Rule 4:50-1(f) catchall provision, defendants argue they have shown vacating default judgment is warranted to achieve equity and justice. After a review of the record and the court's limited findings, we conclude the court mistakenly abused its discretion in failing to vacate plaintiff's default judgment.

We are guided by the principle that "[a] court should view 'the openings of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 123 (App. Div. 2021) (alteration in original) (quoting Mancini, 132 N.J. at 334). While our Supreme Court requires appellate courts to review a trial court's decision on a motion to vacate default judgment "for abuse of discretion," Roberto, 259 N.J. at 436 (citing Guillaume, 209 N.J. at 467), "all 'doubts . . . should be resolved in favor of the parties seeking relief.'" Ibid. (quoting

<u>Mancini</u>, 132 N.J. at 334). Regarding <u>Rule</u> 4:50-1(a), the Supreme Court stated, "Carelessness may be excusable when attributable to an honest mistake that is compatible with due diligence or reasonable prudence." <u>Little</u>, 135 N.J. at 284. Additionally, in addressing a motion to vacate under <u>Rule</u> 4:50-1(f), the Supreme Court explained that "we treat . . . [a party's default judgment] application indulgently." <u>Mancini</u>, 132 N.J. at 336.

We first note in the present matter that after the court carried the motion for almost five months on its own initiative, it declined to hold oral argument, which defense counsel requested. <u>See</u> <u>R.</u> 1:6-2(d); <u>see also</u> <u>Filippone v. Lee</u>, 304 N.J. Super. 301, 306 (App. Div. 1997) (oral argument is ordinarily granted on substantive motion). Had the court timely afforded oral argument, a greater record would have been created, providing counsel and the court an opportunity to address the issues now presented on appeal. The court's four-sentence statement of reasons found "no excusable neglect . . . would permit default being vacated," "[m]ere confusion d[id] not rise to the level of excusable neglect," and "the evidence show[ed] that Ermal did understand that he needed to file a timely response when his representative asked for an extension of time to respond on his behalf." A review of the court's referenced unsigned July 20, 2023 Go Pro and Eco Morris email requesting an extension does not sufficiently support a

A-3002-23

finding of Ermal's understanding of the court process. The court did not specifically address Ermal's other certified reasons.

In seeking to vacate default judgment, Ermal represented he was Go Pro's manager. He certified that: English is not his first language; he had mistakenly not served an answer; he had a limited understanding of the litigation process; and he was out of the country for a period of time after plaintiff filed the complaint. In asserting a meritorious defense, he certified that: Eco Morris performed extensive residential construction work for plaintiff; Eco Morris discovered mold issues, altering the necessary repair work; plaintiff knowingly contracted for the work, and plaintiff obtained outside financing.

We are unpersuaded by plaintiff's counter-argument that defendants failed to demonstrate excusable neglect because they were allegedly involved in prior court proceedings. Plaintiff specifically requests we "take judicial notice of

11

several [court] cases . . . [that] [d]efendants were involved" in,[3] because "defendants not only have experience with the American legal system—they are veritable veterans of the American legal system." In opposition, defendants contend that plaintiff never raised these "unrelated cases" before the court, and our review of the record supports defendants' representation; we therefore decline to consider plaintiff's newly raised arguments. We conclude Ermal's certified reasons provide a basis for excusable neglect, and defendants established a sufficient meritorious defense.

Our view that plaintiff's judgment should have been vacated is further solidified based on our concerns that plaintiff failed to properly effectuate service of process of his amended complaint on each defendant. Relevantly,

---

[3] We note it is unclear whether plaintiff provided for our review all of the exhibits and briefing he submitted to the court below in opposition to defendants' motion to vacate default judgment. Rule 2:5-4(a) states in relevant part, "The record on appeal shall consist of all papers on file in the court . . . with all entries as to matters made on the records of such courts"; see also R. 2:6-1(a)(1)(I) (stating that the appendix must contain parts of the record "essential to the proper consideration of the issues"); R. 2:6-1(a)(2) (stating "[b]riefs submitted to the trial court shall not be included in the appendix, unless . . . the question of whether an issue was raised in the trial court is germane to the appeal"). "We are not 'obliged to attempt review of an issue when the relevant portions of the record are not included.'" State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (quoting Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005)); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing claims that are not presented to a trial court are inappropriate for consideration on appeal).

plaintiff's counsel certified that Go Pro and Elvira received service of process on June 8, 2023, yet plaintiff did not file his amended complaint until four days later on June 12. See Rule 4:9-1 (noting a party served with an amended pleading is charged to "plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders"). If plaintiff did not serve defendants with the amended pleading, the court should not have entered default. See R. 4:50-1(d); Romero, 468 N.J. Super. at 301 ("[W]hen a court is satisfied on a R[ule] 4:50-1(d) application that initial service of process was so defective that the judgment is void for want of in personam jurisdiction, the resulting void default judgment must ordinarily be set aside." (second alteration in original) (quoting Berger v. Paterson Veterans Taxi, 244 N.J. Super. 200, 205 (App. Div. 1990))). While plaintiff's counsel certified that defendants were clearly aware "of the pendency of this action," counsel's representation does not negate Rule 4:43-1's default requirement that plaintiff effectuate service of process of the amended complaint on each defendant. While we recognize counsel's certification provides that plaintiff served Servet on June 19 and served Ermal on June 16, it is unclear

from the record whether plaintiff served his amended complaint prior to the court's entry of default.

Defendants further contend that in the interests of justice and equity, the court should afford Rule 4:50-1(f) relief because they would suffer a substantial injustice if the court did not vacate plaintiff's unsupported default judgment for $653,000.  They argue the record demonstrates the award was unsubstantiated and grossly inflated.  Defendants highlight that the court entered plaintiff's damages award without a proof hearing and a sufficient statement of reasons.  We agree that the court failed to provide a sufficient statement of reasons explaining how plaintiff substantiated the damages amount.  R. 1:7-4(a) (requiring trial courts to make sufficient "find[ings] [of] . . . facts and state its conclusions of law").  "Naked conclusions do not satisfy the purpose of R[ule] 1:7-4.  Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions."  Curtis v. Finneran, 83 N.J. 563, 570 (1980).

A review of plaintiff's September 14, 2023 certification in support of his motion for default judgment shows he "expended $51,500" for defendants to perform roofing work, paid his counsel $7,500, and may be obligated to take a loan for $165,000.  Notably, plaintiff does not further explain his realized

damages for the possible loan obligation. While plaintiff pleaded a CFA claim, which under N.J.S.A. 56:8-19 permits the award of treble damages, it is wholly unclear how the court derived the $653,000 award based on the record. "Rule 4:43-2(b) grants a trial court the discretion to require proof of the quantum of damages as well as entitlement to relief, prior to entry of default judgment." EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 343 (App. Div. 2015). We observe that a proof hearing, as warranted in this matter, would have afforded an opportunity to address the issues surrounding service and plaintiff's limited evidence provided in support of his damages.

For these reasons, we are persuaded that vacating plaintiff's final judgment pursuant to Rule 4:50-1(f) is warranted. When considering a motion for relief under Rule 4:50-1(f), "a court's obligation is 'to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" LVNV Funding, LLC v. Deangelo, 464 N.J. Super. 103, 109 (App. Div. 2020) (quoting Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977)). We part ways with the court's denial of defendants' motion to vacate default judgment, because defendants established exceptional circumstances based on the totality of facts presented.

To the extent not addressed, defendants' remaining contentions lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

16