# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0960-24

K.A.C.-R.,[1]

    Plaintiff-Respondent,

v.

D.A.T.,

    Defendant-Appellant.

_____

        Submitted November 5, 2025 – Decided November 14, 2025

        Before Judges Firko and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FV-16-0634-25.

        Davis Advocacy & Consulting, LLC, attorneys for appellant (James H. Davis, III, on the brief).

        Respondent has not filed a brief.

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10). We briefly note that there is a discrepancy in the record regarding plaintiff's middle initial. We rely on the complaint and intend no disrespect.

PER CURIAM

Defendant D.A.T. appeals from the October 25, 2024 final restraining order (FRO) entered against him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the trial court erred in finding he committed the predicate act of sexual assault and that an FRO was necessary to ensure plaintiff K.A.C.-R.'s future protection. As our review of the record, parties' arguments, and applicable law demonstrates the trial court's findings are supported by sufficient credible evidence, we affirm.

I.

The parties had a brief dating relationship that began in August 2024. They met as freshmen at Montclair State University. After becoming friends, they agreed to have three intimate encounters and then reassess their relationship. The parties had sex on three separate occasions over the course of four days. The first two instances were consensual. Plaintiff requested an FRO based on what occurred during the third encounter.

On September 9, plaintiff obtained a temporary restraining order after filing a sexual assault complaint. She alleged that during the third sexual encounter defendant sexually assaulted her.

2

In October 2024, the trial court presided over the parties' three-day FRO trial. During the trial, plaintiff, her friend D.H., and defendant testified.

Plaintiff, self-represented, testified that on September 3, during the parties' third sexual encounter that started consensually, she clearly withdrew her consent by telling defendant to stop after he began hurting her. She relayed asking defendant multiple times to stop during the sexual encounter and tried to push him away, but he would not stop. She testified that defendant bit her breasts several times and forcibly committed anal intercourse against her will. She cried while defendant forced her to perform oral sex causing her to gag. Plaintiff tried to grab defendant's wrists while he forcibly penetrated her vagina with his fingers. Plaintiff testified she could not breathe after defendant grabbed her head and pushed her down as she attempted to pull away.

About four days after the assault, plaintiff went to the hospital to have a rape kit performed. Plaintiff reported the assault to law enforcement and her therapist. During the trial, plaintiff introduced a picture of a hickey and purported neck bruising, a picture of a shoulder bruise, and text messages between the parties.

On cross-examination, defendant's counsel asked plaintiff why she would send a smiley face to defendant in a text message after the third encounter if it

3

was not consensual. Plaintiff responded that she wanted defendant to think everything was okay. She also clarified that the parties lived on the same dormitory floor at school and she was afraid. Defense counsel also asked if she believed defendant would retaliate, and plaintiff replied yes.

D.H. testified to observing bruises around plaintiff's neck that resembled finger marks and that a chunk of plaintiff's hair was missing. D.H. witnessed plaintiff in an emotional state after the incident.

Defendant testified during the second day of trial but discontinued his testimony based on the advice of counsel. Defendant maintained the third sexual encounter was consensual. He produced photographs of the parties' text messages after the encounter. Defendant had sent plaintiff a text message over pregnancy concerns and suggested if she felt anything to go purchase a "Plan B" pill. Plaintiff responded by text message, "Okie dokie . . . Goodnight <3." Defendant sent plaintiff a text message the next day stating, "I know you probably have unbridled hatred towards me right now." Defendant indicated that he ended their relationship after the incident. He believed plaintiff was retaliating against him for ending the relationship. Defendant also recounted that during the first two sexual occasions they had rough sex, which was why he proceeded to be rougher the third time. Regarding plaintiff's photo of the neck

A-0960-24

bruise, defendant testified it was from the first sexual encounter. Defendant explained the FRO was unnecessary because the university imposed a restraining order to protect plaintiff from any immediate danger or further abuse.

After hearing the testimony and reviewing the evidence, the court issued an FRO accompanied by an oral decision. The court found plaintiff's testimony credible based on her demeanor and responsiveness to questions. The court found plaintiff proved by a preponderance of the evidence the predicate act of sexual assault because she "withdrew her consent" during the third sexual encounter and defendant "knew she withdrew [her] consent." It found relevant defendant's text message to plaintiff apologizing. While the court acknowledged the photograph of the bruise on plaintiff's neck was unclear, it found her testimony regarding defendant's choking was credible. The court was unpersuaded by defendant's argument that plaintiff failed to introduce the results of the hospital's performed rape kit, noting the evidence would have been in law enforcement's control.

Referencing D.H.'s eye contact and responsiveness, the court determined she was also credible. Regarding D.H.'s testimony as to the observation of the missing "chunk of hair" pulled from plaintiff's head, the court noted a significant amount of force is necessary to remove that amount of "hair from a young

A-0960-24

woman's head." Further, the court reasoned the use of such force could not "provide[] sexual gratification to a person . . . having [he]r hair pulled out of [he]r head."

The court additionally found the restraining order necessary to protect plaintiff from further abuse. Reciting plaintiff's testimony that she "was fearful" of defendant and they lived on the same floor at school, the court found that an FRO was necessary for her protection. While the court noted plaintiff had received a "campus restraining order" at school, it found the need for an FRO existed for plaintiff's future protection outside of school.

On appeal, defendant contends reversal of the FRO is warranted because the court erred in: finding a predicate act of domestic violence; finding there was an immediate danger or risk of further abuse; and permitting procedural deficiencies.

## II.

Our review of an FRO issued after a bench trial is limited. T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024). In reviewing "a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." J.D. v. A.M.W., 475 N.J. Super. 306, 312-13 (App. Div.

A-0960-24

2023) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)). Trial court findings are "binding on appeal when supported by adequate, substantial, credible evidence." G.M. v. C.V., 453 N.J. Super. 1, 11 (App. Div. 2018) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). We afford "particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). However, we review de novo a trial court's legal conclusions. C.C. v. J.A.H., 463 N.J. Super. 419, 429 (App. Div. 2020).

The New Jersey Legislature enacted the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The PDVA protects victims of domestic violence, which include, among others, persons "subjected to domestic violence by a person with whom the victim has had a dating relationship." N.J.S.A. 2C:25-19(d); R.G. v. R.G., 449 N.J. Super. 208, 219-20 (App. Div. 2017) (recognizing the amended

A-0960-24

definition of "[v]ictim of domestic violence" evinced "the Legislature's intent to broaden the application" of the PDVA).

The entry of an FRO under the PDVA requires the trial court to make certain findings pursuant to a two-step analysis delineated in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). The court is also required to consider "any past history of abuse by a defendant as part of a plaintiff's individual circumstances and, in turn, factor that history into its reasonable person determination." Cesare, 154 N.J. at 403. "'A single act can constitute domestic violence for the purpose of the issuance of an FRO,' even without a history of domestic violence." C.C., 463 N.J. Super. at 434-35 (quoting McGowan v. O'Rourke, 391 N.J. Super. 502, 506 (App. Div. 2007)).

Second, if a predicate act is proven, the court must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of abuse. Silver, 387 N.J. Super. at 127. A previous history of domestic violence between the parties is one of seven non-exhaustive factors a court is to consider in evaluating whether a restraining order is necessary to

A-0960-24

protect the plaintiff. N.J.S.A. 2C:25-29(a)(1); see also D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (holding whether a court should issue a restraining order depends, in part, on the parties' history of domestic violence). The court may also consider the "existence of immediate danger to person or property." N.J.S.A. 2C:25-29(a)(2).

Sexual assault is a predicate act under the PDVA. N.J.S.A. 2C:25-19(a)(7). A person commits a sexual assault if, during the act of sexual penetration with another person, "[t]he actor commits the act using coercion or without the victim's affirmative and freely-given permission, but the victim does not sustain severe personal injury." N.J.S.A. 2C:14-2(c)(1).

III.

Defendant first contends that the court failed to make "sufficient and specific findings of fact to establish that [defendant] committed sexual assault as defined by law." A review of the court's twenty-three-page oral decision demonstrates that sufficient sexual assault findings were made with specific references to plaintiff's credible testimony regarding defendant's committed sexual acts without consent.[2]

---

[2] We note defendant has failed to comply with applicable court rules as his merits brief references trial evidence, including videos, communications, and

The court found the first prong of <u>Silver</u> was met because defendant committed the predicate act of a sexual assault and recognized that under the statute "[t]he law says that an actor is guilty if he commits an act of sexual penetration with another person . . . where the actor uses physical force or coercion, but does not cause severe personal injury." After finding plaintiff's testimony "credible," the court specifically found plaintiff testified that defendant "push[ed] his penis into her anus," "thrusted his fingers into [her]," "forced [her] to do oral" sex against her will until she was "gagging . . . and in tears." The court also found plaintiff was injured because defendant forcefully pulled her hair out and inhibited her ability to breathe. While the court did not explicitly cite subsection (c)(1) of N.J.S.A. 2C:14-2,[3] its factual findings

reports, not provided on appeal. <u>R.</u> 2:6-1(a)(1)(I) (the appendix must contain parts of the record "essential to the proper consideration of the issues"). Appellate courts are not "obliged to attempt review of an issue when the relevant portions of the [trial court] record are not included." <u>Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C.</u>, 381 N.J. Super. 119, 127 (App. Div. 2005). We note defendant was provided the opportunity to supplement the record but declined to do so. We are nevertheless satisfied the record on appeal is sufficient to consider all of defendant's arguments.

[3] We note defendant did not argue that the court failed to cite the applicable sexual assault subsection seemingly because the court's decision correlates to each element of N.J.S.A. 2C:14-2(c)(1). <u>Cf.</u> <u>State v. Pillot</u>, 115 N.J. 558, 566 (1989) (upholding a court's sentence because it was "possible in the context of this record to extrapolate without great difficulty the court's reasoning").

A-0960-24

correlated to each of the subsection (c)(1)'s elements. Therefore, we are unpersuaded by defendant's argument that "[w]ithout additional evidence supporting . . . plaintiff's testimony, the trial court could not reasonably find for . . . plaintiff that a sexual assault occurred."

We next address defendant's contentions that the court "failed to properly analyze the second prong of <u>Silver</u>" and incorrectly determined an FRO was necessary "to protect . . . plaintiff from immediate danger or further abuse." The court's finding that an FRO was necessary to protect plaintiff from future acts of domestic violence is soundly supported by the record. As reasoned by the court, plaintiff testified to feeling frightened of defendant, attending the same school as defendant, and the necessity for protection outside of school. The court's determination "that there is a need for protection that would be provided by the issuance of a restraining order" is supported by substantial credible evidence.

Finally, defendant's argument that the court failed to provide a "detailed analysis of the conflicting evidence and statutory factors, constitut[ing] a procedural deficiency," is belied by the record. We, therefore, discern no reason to disturb the court's issuance of an FRO against defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0960-24